E-FILED
Monday, 05 May, 2025  04:21:51 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A



**CT Corporation**
**Service of Process Notification**
04/04/2025
CT Log Number 548810541

## Service of Process Transmittal Summary

**TO:**     David Scott, Paralegal Consumer Litigation Team
Aetna Inc
151 Farmington Ave
Hartford, CT 06156-0002

**RE:**     **Process Served in Illinois**

**FOR:**    Aetna Network Services LLC  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | OSF HEALTHCARE vs. AETNA NETWORK SERVICES LLC |
| **CASE #:** | 2025LA0000064 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Chicago, IL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 04/04/2025 at 11:07 |
| **JURISDICTION SERVED:** | Illinois |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/04/2025, Expected Purge Date: 04/09/2025 |
| | Image SOP |
| | Email Notification,  Desiree Beatty  beattyd@aetna.com |
| | Email Notification,  David Scott  ScottD4@aetna.com |
| | Email Notification,  Kim Lees  kimberly.lees@cvshealth.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System
208 South LaSalle Street
Suite 814
Chicago, IL 60604
877-564-7529
MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Fri, Apr 4, 2025
**Server Name:**                             Drop Service

| Entity Served | AETNA NETWORK SERVICES LLC |
|---|---|
| Case Number | 2025-LA-0000064 |
| Jurisdiction | IL |

| Inserts | | |
|---|---|---|
| | | |



# SUMMONS

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1ˢᵗ Summons issued for this Defendant/Respondent.*

**COUNTY:** Peoria
*County Where You Are Filing the Case*

Enter the case information as it appears on your other court documents.

**PLAINTIFF/PETITIONER OR IN RE:** OSF Healthcare
*Who started the case.*                              *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** AETNA NETWORK SERVICES LLC
*Who the case was filed against.*

f/k/a AETNA HEALTH OF ILLINOIS, on

behalf of itself and its Affiliates
*First, Middle, and Last Name or Business Name*

**2025-LA-0000064**
**Case Number**

## The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/summons-instructions.

Check 1 if this is a 30-day summons, or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.
- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

## ☑ 1. 30-DAY SUMMONS

To participate in this case, you must **file** your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address: 324 Main St., Rm. 215  Peoria, IL 61602
*Courthouse Street Address*

**- or -**

## ☐ 2. DATE CERTAIN SUMMONS

*Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/CircuitClerks.*

To respond to this *Summons*, you must **attend court** in one of the ways checked below on:

_____ at _____ ☐ a.m. ☐ p.m. in _____.
*Month, Day, Year*                    *Time*                                  *Courtroom Number*

Case Number: _____

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person** at: _____
               *Courtroom Address*                        *Courtroom Number*

☐ **Remotely** (video or telephone)

    **By video conference** at: _____
                       *Video Conference Website*

        Log-in information: _____
                    *Video Conference Log-in Information, Meeting ID, Password, etc.*

    **By telephone** at: _____
                  *Call-in Number for Telephone Remote Appearance*

To find out more about remote court options:

Phone: _____ or Website: _____
      *Circuit Clerk's Phone Number*                 *Website URL*

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*: $ <u>389,749.92</u> .
                                         *(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition*.

    ☐ Yes   ☑ No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

    ☑ I am having 1 Defendant/Respondent served and their information is on this form below.

    ☐ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: _____.
                                  *Number*

b. First Defendant/Respondent's **primary address/information** for service:

    Name: <u>AETNA NETWORK SERVICES LLC f/k/a AETNA HEALTH OF ILLINOIS, on behalf of itself and</u>
        *First, Middle, and Last Name, or Business Name*

    Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

    <u>C T CORPORATION SYSTEM</u>
        *First, Middle, and Last Name*

    Street Address: <u>208 SO LASALLE ST, SUITE 814</u>
                *Street, Apt #*

    City, State, ZIP: <u>CHICAGO</u>               <u>IL</u>     <u>60604</u>
                   *City*                       *State*       *Zip*

    Telephone: _____ Email: _____

Case Number: _____

c.  **Second address** for this Defendant/Respondent:

☑ I do **not** have another address where the Defendant/Respondent might be found.

☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address: _____
*Street, Apt #*

City, State, ZIP: _____
              *City*                                                        *State*             *Zip*

Telephone: _____     Email: _____

d.  Person who will serve your documents on this Defendant/Respondent:

☐ Sheriff in Illinois  ☑ Special process server  ☐ Licensed private detective

☐ Sheriff outside Illinois: _____
                                      *County & State*

---

## PLAINTIFF/PETITIONER INFORMATION:

*Enter your information below.*

Name OSF HEALTHCARE _____
*First, Middle and Last Name*

Registered Agent's name, if any LAW OFFICES OF STEPHENSON, ACQUISTO, & COLMAN _____
                                        *First, Middle and Last Name*

Street Address 20 N. CLARK ST., STE. 3300 _____
*Street, Apt #*

City, State, ZIP: CHICAGO       IL      60602 _____
                     *City*                                            *State*             *Zip*

Telephone: 312-626-1870 _____     Email: reception@sacfirm.com _____

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

---

**STOP**  The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

Witness this Date: _____     *Seal of Court*

Clerk of the Court: _____

**To be filled in by an officer or process server:**

Date of Service: _____

*Fill in the date above and give this copy of the Summons to the person served.*

---

**Note to officer or process server:**

⊙ If 1 is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.

⊙ If 2 is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.

    ■ If 2 is checked **and** 3b is checked yes, the *Summons* must be served at least 3 days before the court date.

⊙ Fill in the date above and give this copy of the *Summons* to the person served.

⊙ You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

---

*Case Number:* _____



# WHAT'S NEXT

## NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.

 Learn more about each step in the process and how to file in the instructions: ilcourts.info/summons-instructions.

## NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:



**You have been sued:**
- Read all documents attached to this *Summons*.
- All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons):**
- You **must** file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- You should be notified of any future court dates.

**If Section 2 on page 1 of on this *Summons* is checked (date certain summons):**
- You **must** attend court on the date listed in Section 2 of this *Summons*.
- If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**
- Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- You can also get free legal information and legal referrals at illinoislegalaid.org.
- If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

Case Number: _____

# PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1ˢᵗ Summons issued for this Defendant/Respondent.*

**COUNTY:** Peoria _____
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** OSF Healthcare _____
*Who started the case.*          *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** AETNA NETWORK SERVICES LLC _____
*Who the case was filed against.*
                                                      f/k/a AETNA HEALTH OF ILLINOIS, on ___
                                                      behalf of itself and its Affiliates _____
                                                      *First, Middle, and Last Name or Business Name*

**Case Number**

🛑 **STOP** | Do not complete the rest of the form. **The sheriff or special process server will fill in the form.** Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

My name is _____ and I state:
                          *Officer/Process Server First, Middle, Last Name*

## SERVICE INFORMATION

Defendant/Respondent: _____
                                  *First, Middle, Last Name, or Business Name*

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

- or -

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

☐ **Personally** on the Defendant/Respondent:
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

   Address, Unit#: _____

   City, State, ZIP: _____

☐ On **someone else at the Defendant/Respondent's home** who is at least 13 years old and is a family member or lives there:
   Name of person served: _____
                                      *First, Middle, Last Name*
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

   Address, Unit#: _____

   City, State, ZIP: _____
   and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above

   address on this date: _____.

Case Number: _____

☐ On the **Business's agent:** _____ .
First, Middle, Last Name

    ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____
    Other information about service attempt:

    _____
    _____
    _____

**Second Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____
    Other information about service attempt:

    _____
    _____
    _____

**Third Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____
    Other information about service attempt:

    _____
    _____
    _____

---

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature /s/_____ Print Your Name _____

You are: ☐ Sheriff in Illinois      ☐ Special process server
       ☐ Sheriff outside Illinois: _____ ☐ Licensed private detective, license number: _____
                County and State                                             License number

**FEES:**

    Service and Return: $_____ Miles: $_____ Total: $_____

FILED
ROBERT M. SPEARS
4/2/2025 1:21 PM
CLERK OF THE CIRCUIT COURT
PEORIA COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF PEORIA COUNTY, ILLINOIS

| | |
|---|---|
| OSF HEALTHCARE, | ) COMPLAINT AT LAW |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2025 XXXXX |
| | ) |
| AETNA NETWORK SERVICES LLC | ) JURY TRIAL DEMANDED |
| f/k/a AETNA HEALTH OF ILLINOIS, on | ) |
| behalf of itself and its Affiliates, DOES 1 | ) |
| THROUGH 25, | ) |
| | ) |
| Defendants. | ) |

THIS CASE IS SET FOR A MANAGEMENT CONFERENCE
ON 09/19/25 @ 9:00A IN COURTROOM 13/214
OF THE PEORIA COUNTY COURTHOUSE.
IF THE DEFENDANT(S) ANSWERS(S) MORE THAN 35 DAYS
BEFORE THIS DATE, THEN THE PARTIES SHALL
SCHEDULE A CASE MANAGEMENT CONFCRENCE WITHIN
25 DAYS OF THE DATE THE ANSWER'S PLED

## PLAINTIFF OSF HEALTHCARE'S COMPLAINT AT LAW

1.     Plaintiff, OSF HEALTHCARE (hereinafter "OSF"), by and through its attorneys, LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, for its Complaint at Law ("Complaint") against AETNA NETWORK SERVICES LLC f/k/a AETNA HEALTH OF ILLINOIS, on behalf of itself and its Affiliates, (hereinafter "AETNA") and DOES 1 THROUGH 25, inclusive, upon personal information as to its own activities and upon information and belief as to the activities of others and all other matters, and states as follows:

## INTRODUCTION

2.     This is an action against AETNA for breach of express written contract and, in the alternative, breach of implied-in-fact contract and/or *quantum meruit* arising from a business relationship between OSF and AETNA. By this action, OSF

seeks compensatory damages, interest, and any further relief this Court deems equitable and just.

## PARTIES

3.      OSF is a not-for-profit corporation organized and existing pursuant to the laws of the State of Illinois. OSF provided medical care to Patient (as such term is defined herein), including the Patient at issue herein who was an AETNA beneficiary when such medical care was provided. OSF has its principal place of operation in the City of Peoria, County of Peoria, and State of Illinois and is incorporated in the State of Illinois.

4.      AETNA is a private insurance company formed in Pennsylvania, and headquartered in Connecticut. AETNA operates throughout the State of Illinois and is actively registered with the Illinois Department of Insurance.

5.      OSF is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants DOES 1 through 25, inclusive, and therefore sues such defendants by such fictitious names.  OSF will seek leave of the Court to amend this Complaint to allege its true names and capacities when ascertained.

6.      AETNA and Does 1 through 25, inclusive, shall be collectively referred to as "AETNA" or "Defendants."

7.      Defendants, each of them, at all relevant times, have transacted business

in the State of Illinois. The violations alleged within this Complaint have been and are being carried out in the State of Illinois.

8.    At all relevant times each of the Defendants, including the Defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

## JURISDICTION AND VENUE

9.    Jurisdiction over this matter exists under 735 ILCS 5/2-209 because OSF is a resident of the State of Illinois, and because AETNA transacts business in Illinois, contracts to insure people(s) in the state, and because AETNA's making of the contract, performance of the transactions, formation of the implied-in-fact contract and subsequent breaches of said contracts at issue is substantially connected with the State of Illinois.

10.    Venue is proper in the Circuit Court of Peoria County pursuant to 735 ILCS 5/2-101 and 5/2-103 because it is the county in which the transactions occur out of which the cause of action arises.

## FACTUAL BACKGROUND

11.    Between the dates of November 23, 2022, through December 19, 2022,

OSF provided the medically necessary, emergency care, post-emergent stabilization and treatment to the Patient identified on the spreadsheet attached as Exhibit A[1] to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patient") totaling one (1) claim.

12.   Recognizing the importance and critical nature of emergency medical services, Illinois law demands that "[n]o hospital, physician, dentist or other provider of professional health care licensed under the laws of this State may refuse to provide needed emergency treatment to any person whose life would be threatened in the absence of such treatment, because of that person's inability pay therefor, nor because of the source of any payment promised therefore." 210 ILCS 70/1.

13.   Further the Emergency Medical Treatment and Active Labor Act ("EMTALA") requires that all patients who present with an emergency medical condition must receive treatment to the extent that their emergency condition is medically "stabilized" irrespective of their ability to pay for such treatment. 42 U.S.C. § 1395dd.

14.   Illinois law specifically requires that insurance companies provide coverage (and reimbursement) for emergency care regardless of "whether the emergency services are performed by a preferred or non-preferred provider and the

---

[1] OSF has limited disclosure of patient identification here pursuant to the privacy provisions of the Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320 *et seq.*, General Information Privacy Act, 410 ILCS 513/15 – 50; and General Administrative Order 18-1.

coverage shall be at the same benefit level as if the service or treatment had been rendered by a preferred provider." 215 ILCS 124/10(b)(7); see also 215 ILCS 5/356z.3a(b).

15.     Insurance companies like AETNA receive millions of dollars in premiums collected from their clients and insureds in exchange for the promise of making benefit payments to healthcare providers for emergency and other medical services rendered to their members.

16.     OSF is informed and believes and thereon alleges that at all relevant times Patient was a beneficiary of health plans sponsored, administered, and/or funded by AETNA.

17.     Prior to, and during, the dates of service set forth in Ex. A, OSF sought and received authorization for treatment from AETNA.

18.     On or about December 8, 2022, AETNA faxed certification and authorized inpatient treatment from November 23, 2022, through December 4, 2022.

19.     On or about December 9, 2022, AETNA faxed certification and authorized treatment from December 4, 2022, through December 9, 2022.

20.     On or about December 14, 2022, AETNA faxed certification and authorized inpatient treatment through December 13, 2022.

21.     On or about December 17, 2022, AETNA faxed certification and authorized inpatient treatment lasting twenty-one (21) days.

22.   On or about December 19, 2022, AETNA faxed certification and authorized inpatient treatment through December 17, 2022.

23.   On or about December 28, 2022, AETNA faxed certification and authorized inpatient treatment for all twenty-six (26) days.

24.   OSF's charges for the medically necessary services, supplies and/or equipment rendered to Patient amounted to no less than three hundred ninety-two thousand, two hundred thirty-five dollars and fifty-five cents ($392,235.55). AETNA paid OSF two thousand, four hundred eighty-five dollars and sixty-three cents ($2,485.63).

25.   OSF timely, properly, and repeatedly submitted the bills and itemized statements containing said charges for the medically necessary services, supplies, and/or equipment rendered to Patient to AETNA for payment.

26.   AETNA was the primary insurer at the time of Patient's admissions and responsible for the entirety of their claims.

27.   On information and belief, AETNA received premium payments for Patient's enrollment and coverage in AETNA's health plan.

28.   AETNA unjustly benefited by not paying fully OSF for the reasonable value of such services. AETNA promised its beneficiaries (including Patient) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such

premiums and then refused, despite demands, to fully and properly pay OSF the reasonable and customary value of the medical care rendered to AETNA's beneficiary as specified in Ex. A.

29.     AETNA further unjustly and directly benefited when it caused OSF to treat its beneficiary, Patient, in the following ways:

a)  Improved Health Outcomes – AETNA has a vested interest in keeping their enrollees, like Patients, healthy, as healthier individuals require less medical care and incur fewer costs.  By encouraging their enrollees, like Patient, to seek medical care when needed, including hospitalization, when necessary, AETNA helped prevent Patients' illnesses from becoming more serious and costly for AETNA.

b) Better Customer satisfaction – when Patients, including Patients at issue herein, received quality care at OSF, Patients were more satisfied with their health insurance coverage which led to increased loyalty and retention rates for AETNA.

c) Increased Market Share – by offering competitive coverage that includes access to high-quality hospitals, like OSF, AETNA was able to attract new customers and retain existing ones.  This helped them gain a larger share of the market which led to increased profits and better bargaining power with healthcare providers.

d) Cost Savings – with an improved health outcome of Patients, AETNA saved money by avoiding further future costly treatments and is therefore able to keep premiums lower for their customers, further increasing AETNA's attractiveness and competitiveness in expanding its patient-pool.

30.    As a direct and proximate result of AETNA's wrongful conduct, OSF has suffered damages in an amount to be proven at trial but not less than the sum of two-hundred nine thousand, eight hundred twenty-eight dollars and ten cents ($209,828.10) exclusive of interest.

## COUNT I – BREACH OF CONTRACT
(Against Defendant AETNA and DOES 1 through 25, inclusive)

31.    OSF incorporates by reference and re-alleges paragraphs 1-30 of this Complaint here as though set forth in full.

32.    On or about September 1, 2009, OSF entered into a Hospital Participation Agreement with AETNA, a redacted copy of which is attached as Exhibit B to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Contract") (the signatures of Defendant therein demonstrating acceptance by incorporation of AETNA in part), in consideration of which AETNA agreed to pay OSF for the medically necessary services, supplies and/or equipment rendered to Patients by OSF.[2]

---

[2] The Contract has been redacted due to the confidentiality clause and intents of the Parties that the Contract remain confidential. An unredacted copy is available upon request from Plaintiff's counsel.

33.     According to the Contract, OSF agreed to provide hospital services to members of AETNA. *See* Ex. B *generally*. In exchange for the medically necessary services provided to AETNA beneficiaries, AETNA agreed to pay the OSF the stated rates called for in the Contract. *See* Ex. B.

34.     OSF fulfilled its obligation under the Contract to provide medically necessary care for the benefit of Patients, as individual beneficiaries of AETNA's health plan. In exchange, AETNA agreed to pay OSF the negotiated rate pursuant to the terms of the Contract for that care. *Id.*

35.     Under the Contract, OSF agreed to submit claims to AETNA. In exchange, AETNA agreed to process and pay such claims at a rate according to the Contract. Ex B. §§ 4.0 *Claims Submissions, Compensation and Member Billing.*

36.     Pursuant to the Contract, AETNA still owes OSF a total of two-hundred nine thousand, eight hundred twenty-eight dollars and ten cents ($209,828.10) exclusive of interest, exclusive of interest, for the medically necessary services rendered to Patient identified in Ex. A.

37.     OSF performed the conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Contract with AETNA.

38.     OSF demanded that AETNA perform its obligations and pay it the amount due and owing under the Contract for the medically necessary care OSF

rendered to Patient on behalf of AETNA.

39.   AETNA failed to pay OSF the contracted amount due for the medically necessary care rendered to Patient despite demands thereof.

40.   In accordance with the terms of the Contract, OSF notified AETNA of the dispute in order to resolve the dispute without the need for litigation.

41.   As a direct and proximate result of AETNA's breach of its express written contract with OSF, OSF has suffered damages in an amount to be proven at trial but not less than the sum of two-hundred nine thousand, eight hundred twenty-eight dollars and ten cents ($209,828.10), exclusive of interest.

42.   WHEREFORE, OSF prays this Court enter judgment in its favor and against AETNA as follows:

a) For the principal sum of two-hundred nine thousand, eight hundred twenty-eight dollars and ten cents ($209,828.10);

b) For interest on such principal sum at the rate of 9% per annum, pursuant to 215 ILCS 5/368 (c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of 5% per annum, pursuant to 815 ILCS 205/2; and,

c) Grant such other and further relief as the Court deems just and proper

## COUNT II – BREACH OF IMPLIED-IN-FACT CONTRACT (IN THE ALTERNATIVE)
(Against Defendant AETNA and DOES 1 through 25, inclusive)

43.   OSF incorporates by reference and re-alleges paragraphs 1-30 of this

Complaint here as though set forth in full.

44.     In the alternative, *assuming arguendo* that it is determined that no written contract between AETNA and OSF existed, and/or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or equipment rendered to Patient, Plaintiff should nevertheless be fully paid for AETNA's breach of an implied-in-fact contract with OSF.

45.     OSF provided medically necessary services, supplies, and/or equipment to Patient for their hospitalization, and did not perform those services gratuitously.    Rather, AETNA knew and understood that OSF rendered such treatment with the expectation of being paid.

46.     Prior to the treatment rendered by OSF, through industry custom and practice, AETNA impliedly agreed, promissorily impliedly expressed and understood that OSF would render medically necessary care to AETNA beneficiaries, submit bills for such care to AETNA, and that AETNA would pay the usual and customary value to OSF for the necessary medical treatment rendered to Patient, rather than Patient themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

47.     OSF admitted Patient and contacted AETNA to verify Patient's healthcare eligibility under an AETNA health plan, to obtain authorization from AETNA for the medical services rendered and to be rendered, and to establish its

right to be paid by AETNA the usual and customary value for such care. In response, AETNA represented that Patient was a beneficiary of its health plan.

48.    AETNA's repeated written authorizations for treatment were implied requests to OSF to perform those services on behalf of Patient, and continue treatment.

49.    OSF rendered such treatments after the implied requests for such services by AETNA and OSF intended those services to benefit, among others, AETNA.

50.    AETNA directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that OSF perform those services on Patient who was a beneficiary of AETNA, thus fulfilling AETNA's obligation to secure medically necessary healthcare for its beneficiaries. When Patient received those services, the express insurance coverage agreement made between AETNA and Patient was satisfied and AETNA was able to retain rightfully the premiums paid on behalf of Patient for enabling Patient to receive the medical care performed by OSF.

51.    By treating Patient and initiating contact with AETNA as described above, OSF and AETNA entered into an implied-in-fact contract through industry custom and practice, and prior and on-going course of conduct between OSF and AETNA. Prior course of conduct included, among other things:

a) AETNA's issuance of identification cards to Patient;

b) AETNA's instructing Patient to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c) OSF communicating with AETNA to ask for authorizations to render medical care to Patient and AETNA providing several written authorizations to OSF for such care;

d) AETNA communicating to OSF the medical eligibility benefits for Patient without advising OSF that AETNA would not make full payment of the usual and customary value of services to be provided to Patients;

e) AETNA requesting that OSF send AETNA clinical information and medical records; and

f) AETNA's issuance of authorizations to treat Patient.

52.    In addition, prior course of conduct by AETNA included OSF submitting claims to AETNA and in response, AETNA would properly pay the usual and customary value of those claims.  Over the last five (5) years, OSF has billed numerous claims and AETNA has satisfactorily paid on a number of claims submitted by OSF in the near identical manner and method as the facts alleged herein.

53.    OSF provided medically necessary care to AETNA beneficiaries,

including Patient, as described above.

54.    OSF properly billed AETNA for the medically necessary services provided to Patient as listed in Ex. A.

55.    AETNA breached the implied-in-fact contract by refusing to properly pay Patient's claims, resulting in an aggregate underpayment of no less two-hundred nine thousand, eight hundred twenty-eight dollars and ten cents ($209,828.10) exclusive of interest, of the usual and customary charges of the medical services performed by OSF.

56.    OSF performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

57.    AETNA breached the implied-in-fact contract by failing to pay OSF fully for the medically necessary services, supplies and/or equipment rendered or supplied to Patient.

58.    As a direct and proximate result of AETNA's breach of the implied-in-fact contract, OSF suffered damages in an amount to be proven at trial but not less than two-hundred nine thousand, eight hundred twenty-eight dollars and ten cents ($209,828.10) exclusive of interest.

59.    WHEREFORE, OSF prays this Court enter judgment in its favor and against AETNA as follows:

a) For the principal sum of two-hundred nine thousand, eight hundred

twenty-eight dollars and ten cents ($209,828.10);

b) For interest on such principal sum at the rate of nine percent (9%) per annum, pursuant to 215 ILCS 5/368(a)(c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of five percent (5%) per annum, pursuant to 815 ILCS 205/2; and,

c) For such other and further relief as the Court deems just and proper.

### COUNT III – QUANTUM MERUIT
### (IN THE ALTERNATIVE)
(Against Defendant AETNA and DOES 1 through 25, inclusive)

60.   OSF incorporates by reference and re-alleges paragraphs 1-30 of this Complaint here as though set forth in full.

61.   On the dates of service set forth in Ex. A, OSF provided emergency and/or medically necessary care to Patient.

62.   In the alternative, assuming *arguendo* that it is determined that no written or implied-in-fact contract between AETNA and OSF existed, and/or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or equipment rendered to Patient, Plaintiff should nevertheless be fully paid under the common law doctrine of *quantum meruit*.

63.   OSF did not perform these services gratuitously. Rather, AETNA, by its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, knew and understood that OSF rendered such treatment with the

expectation of being paid.

64.    Prior to the treatment rendered by OSF to Patients, through industry custom and practice, AETNA impliedly agreed and understood that OSF would render medically necessary services to AETNA beneficiaries, submit bills for such care to AETNA, and that AETNA would pay the usual and customary value to OSF for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

65.    Specifically, prior to the dates that OSF provided for medically necessary, non-emergent services, OSF contacted AETNA to verify Patient's healthcare eligibility under an AETNA health plan, to obtain authorization from AETNA for the medical services rendered and to be rendered, and to establish its right to be paid by AETNA the usual and customary value for such care. In response, AETNA represented that Patients was a beneficiary of one of AETNA's health plans.

66.    At no time did OSF represent that it would perform the services gratuitously.

67.    By treating Patient and initiating contact with AETNA as described above, OSF provided a benefit to AETNA and AETNA failed to compensate properly OSF for that received benefit, despite the prior and on-going course of conduct between OSF and AETNA. Prior course of conduct included, among other things:

a) AETNA's issuance of identification cards to Patients;

b) AETNA's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c) OSF communicating with AETNA to ask for authorization to render medical care to Patients and AETNA issuing authorization to OSF for treatment for that care;

d) AETNA communicating to OSF the medical eligibility benefits for Patients without advising OSF that AETNA would not make full payment of the usual and customary value of the services to be provided to Patients; and

e) AETNA requesting that OSF send AETNA clinical information and medical records.

68. In addition, prior course of conduct by AETNA included OSF submitting claims to AETNA and in response, AETNA would properly pay the usual and customary value of those claims. Over the last five (5) years, OSF have billed numerous claims and AETNA has satisfactorily paid on a number of claims submitted by OSF in the near identical manner and method as the facts alleged herein.

69. In addition, AETNA pre-verified Patient's coverage and eligibility and authorized the treatments.

70.    AETNA provided authorization to OSF for Patient's treatments. Those representations were implied requests to OSF to perform those services on behalf of Patients.

71.    OSF rendered such treatments after the implied requests for such services by AETNA and OSF intended those services to benefit, among others, AETNA.

72.    AETNA directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that OSF perform those services on Patient who was a beneficiary of AETNA, thus fulfilling AETNA's obligation to secure medically necessary healthcare for its beneficiary.  When Patient received those services, the express insurance coverage agreement made between AETNA and Patient was satisfied and AETNA was able to retain rightfully the premiums paid on behalf of Patient for enabling Patient to receive the medical care performed by OSF. Further, OSF directly conferred a benefit upon AETNA when it helped AETNA make good on promises AETNA made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary.

73.    OSF provided medically necessary care to the AETNA beneficiary as described herein.

74.    OSF properly billed AETNA for the medically necessary services

provided to Patients as listed in Ex. A.

75.     OSF is informed and believes and alleges thereon that AETNA expressly instructed its beneficiaries (including Patient) to seek medical care in an emergency from the nearest medical provider and for such beneficiaries to tell the emergency medical provider to send AETNA the bills for such care for payment by AETNA (except for co-payments, deductibles and co-insurance amounts, if any).

76.     After OSF rendered the care specified in Ex. A to Patient, OSF properly and timely billed AETNA for such care.

77.     The reasonable value of the medical care provided was and is the usual and customary charges of those services that is the total billed charges in the bills submitted to AETNA by OSF. The total charges billed to AETNA amounted to three hundred ninety-two thousand, two hundred thirty-five dollars and fifty-five cents ($392,235.55). AETNA paid OSF two thousand, four hundred eighty-five dollars and sixty-three cents ($2,485.63).

78.     Despite repeated demands thereon, over several years, AETNA has only paid OSF two thousand, four hundred eighty-five dollars and sixty-three cents ($2,485.63) for the medical care rendered to Patient.

79.     OSF did not perform these services gratuitously, but rather expected to be paid the reasonable and customary value for such services which amounts to three hundred eighty-nine thousand, seven hundred forty-nine dollars and ninety-two

cents ($389,749.92), exclusive of interest.

80.   AETNA accepted the services OSF provided to Patient as demonstrated by acts including but not exclusive to providing authorization for Patient's treatments, and collection of Patient's premiums.

81.   As a direct and proximate result of AETNA's misconduct, OSF has suffered damages in an amount to be proven at trial but not less than three hundred eighty-nine thousand, seven hundred forty-nine dollars and ninety-two cents ($389,749.92), exclusive of interest.

82.   WHEREFORE, OSF prays this Court enter judgment in its favor and against AETNA as follows:

a)   For the principal of three hundred eighty-nine thousand, seven hundred forty-nine dollars and ninety-two cents ($389,749.92);

b)   For interest on such principal sum at the rate of nine percent (9%) per annum, pursuant to 215 ILCS 5/368(a)(c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of five percent (5%) per annum, pursuant to 815 ILCS 205/2; and

c)   For such other and further relief as the Court deems just and proper.

Dated:  April 2, 2025

Respectfully submitted,

LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.

By:   /s/   *Lauren K. Miller*
One of the Attorneys for Plaintiff
OSF HEALTHCARE


David F. Mastan, Esq., ARDC #6328951
Marcus R. Morrow, Esq., ARDC #6317812
Lauren K. Miller, Esq., ARDC #6342296
LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
dmastan@sacfirm.com
mmorrow@sacfirm.com
lmiller@sacfirm.com

**OSF HEALTHCARE v. AETNA, INC**

FILED
ROBERT M. SPEARS
4/2/2025 1:21 PM
CLERK OF THE CIRCUIT COURT
PEORIA COUNTY, ILLINOIS

FC 36710

| No. | Admit Date | Discharge Date | Provider Name | Total Charges | Total Paid | Underpaid per Contract |
|-----|------------|----------------|---------------|---------------|------------|------------------------|
| 1 | 11/23/2022 | 12/19/2022 | SAINT FRANCIS MEDICAL CENTER | $ 392,235.55 | $ 2,485.63 | $ 209,828.10 |
| | | | | $ 392,235.55 | $ 2,485.63 | $ 209,828.10 |

| Underpaid per Implied-in-Fact | Underpaid per QM |
|---|---|
| $ 209,828.10 | $ 389,749.92 |
| $ 209,828.10 | $ 389,749.92 |

FILED
ROBERT M. SPEARS
4/2/2025 1:21 PM
CLERK OF THE CIRCUIT COURT
PEORIA COUNTY, ILLINOIS



RECEIVED
JUL 1 0 2009

# ORIGINAL

OSF Healthcare System
Effective Date: 09/01/2009

## HOSPITAL PARTICIPATION AGREEMENT

This Hospital Participation Agreement ("Agreement") is made and entered into as of September 1, 2009 ("Effective Date") by and between Aetna Health of Illinois Inc., an Illinois corporation, (hereinafter "Company") and OSF Healthcare System, an Illinois not-for-profit Corporation, (Hereinafter referred to as "OSFHS"), with corporate offices located in Peoria, Illinois, owner and operator of Saint Anthony Medical Center, Rockford, Illinois; Saint James Hospital, Pontiac, Illinois; St. Joseph Medical Center, Bloomington, Illinois; Saint Francis Medical Center, Peoria, Illinois; St. Mary Medical Center, Galesburg, Illinois; OSF Holy Family Medical Center, Monmouth, Illinois, and their respective service locations as attached to this Agreement (all such foregoing facilities hereinafter referred to collectively as "Hospital(s)"). Parties acknowledge that there is mutual interest and intent to include all Hospital ancillary services as part of this agreement. In the event that the negotiations (rates and language) are not complete to both parties' satisfaction at the execution of this Agreement, Hospital and Company agree to work collaboratively to ensure that such negotiations are concluded and the Hospital ancillary services are added to this Agreement by Amendments executed within 120 days of execution of this Agreement.



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009





OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



IN WITNESS WHEREOF, the undersigned parties have executed this Agreement by their duly authorized officers, intending to be legally bound hereby.

HOSPITAL

By: _____

Printed Name: James Moore

Title: Chief Executive Officer

Date: 7/8/09

COMPANY

By: _____

Printed Name: Allan Greenberg

Title: Regional Manager for Health Care Management

Date: 7/22/09

OSF Healthcare SystemEffective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009





OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



OSF Healthcare System
Effective Date: 09/01/2009



